FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 25, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BARBARA C.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of
Social Security,[2]

               Defendant.

No.   4:19-CV-5024-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions. ECF
Nos. 14 & 15. Plaintiff Barbara C. appeals a denial of benefits by the
Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by
first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.
Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.
Civ. P. 25(d).

weighing the medical opinions; 2) discounting Plaintiff's symptom reports; 3) failing to properly consider lay statements; and 4) improperly assessing Plaintiff's residual functional capacity. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 14, and grants Defendant's Motion for Summary Judgment, ECF No. 15.

## I. Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II. Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of September 24, 2014.[18] Her claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Mark Kim.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 24, 2014, the alleged onset date;

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 162-65.

[19] AR 92-98, 100-06.

[20] AR 33-71.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; bilateral shoulder impingement; osteoarthritis of the knees; osteoarthritis of the right hip; and obesity;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except Plaintiff:

  > could stand or walk up to four hours in an eight-hour workday and sit for up to four hours in an eight-hour workday. [Plaintiff] would need to be able to alternate between sitting and standing positions every hour while staying on task, for at least ten minutes or so. [She] could occasionally stoop, kneel, and climb ramps and stairs but never crouch, crawl, or climb ladders or scaffolds. [She] could occasionally reach overhead with the bilateral upper extremities and occasionally perform foot controls with right foot. [She] should avoid all exposure to excessive vibration and hazards such as dangerous moving machinery and unprotected heights.

- Step four: Plaintiff was capable of performing past relevant work as a data processing services sales representative; and

- Plaintiff was not disabled from September 24, 2014, to the date of the ALJ's decision on January 3, 2018.[21]

---

[21] AR 17, 19-32.

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the reviewing opinion of the testifying medical expert Robert Thompson, M.D.;

- significant weight to the reviewing opinion of Greg Saue, M.D.; and

- little weight to the treating opinion of Jennifer Smith, M.D.[22]

The ALJ discounted the statements of Plaintiff's step-mother and did not discuss the statements from Plaintiff's former supervisor.[23] The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[22] AR 25.

[23] AR 25.

[24] AR 23.

[25] AR 1-6.

[26] 42 U.S.C. § 405(g).

evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

### A.    Medical Opinions: Plaintiff failed to establish consequential error.

Plaintiff challenges the ALJ's assignment of little weight to Dr. Smith's opinion while assigning greater weight to the opinions of the reviewing physicians. The record reflects that Dr. Smith treated Plaintiff from 2011 through 2017.[34] In August 2017, Dr. Smith opined that Plaintiff was incapable "of performing any type of work on a reasonably continuous, sustained basis."[35]

Dr. Smith's opinion was contradicted by the reviewing opinions of Dr. Saue and Dr. Thompson, who both opined that Plaintiff could sustain work with exertional, postural, and reaching limitations.[36] Accordingly, the ALJ, who is tasked with weighing conflicting medical opinions, was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr.

---

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[34] AR 559, 496-98.

[35] AR 949.

[36] AR 949, 37-49, 86-88.

Smith's opinion.[37] Here, the ALJ discounted Dr. Smith's opinion because 1) Dr. Smith merely completed a check-box form without providing a sufficient explanation or citation to supporting objective medical evidence; 2) Dr. Smith's opinion was inconsistent with the record; and 3) an opinion about capacity for work is a finding reserved for the Commissioner.

As to the ALJ's first reason, a medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported.[38] However, if treatment notes are consistent with the opinion, a conclusory "check-the-box" opinion may not

_____

[37] The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician, and 3) a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician. *Id.* However, when a treating physician's opinion is contradicted by another physician's opinion, it may be rejected with "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.).

[38] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

automatically be rejected.[39] Here, Dr. Smith merely noted on the opinion form that Plaintiff was unable to sustain work because of "chronic back pain."[40] The ALJ rationally found that Dr. Smith failed to provide sufficient explanation for this opinion. This was a specific and legitimate reason to discount Dr. Smith's opinion so long as the opinion was not otherwise supported by Dr. Smith's treatment notes.

Looking at Dr. Smith's treatment notes after the alleged disability date of September 24, 2014, the ALJ reasonably determined that the treatment notes did not contain noted observations or findings consistent with a complete inability to sustain work due to severe back pain or other physical conditions. For example, 1) a March 2015 treatment note indicated mild tenderness over the ball of Plaintiff's right foot, but no cyanosis, clubbing, or edema in her extremities[41]; and 2) treatment notes from October 2015 to August 2016 indicated no abnormalities under "extremities," "general," or otherwise, but noted that Plaintiff was depressed.[42] The ALJ's decision to discount Dr. Smith's opinion because it was not supported by the information on the opinion form or by Dr. Smith's longitudinal

---

[39] *Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form).

[40] AR 949.

[41] AR 488-89.

[42] AR 502-15

treatment notes is supported by substantial evidence and was a legitimate and specific reason to discount Dr. Smith's extreme opinion.[43]

The ALJ also found Dr. Smith's opinion inconsistent with the record as a whole.[44] This is an appropriate consideration for an ALJ, as an ALJ may discount an opinion that is neither consistent with nor supported by the record.[45] Here, when summarizing the medical evidence, the ALJ highlighted that the March 2016 MRI reflected a post-surgical change at the L4-5 fusion, multilevel degenerative change with mild central canal stenosis at L3-4, and mild levoconvex curvature of the lumbar spine.[46] Imaging of Plaintiff's right hip revealed mild osteoarthritis and mild fraying of the acetabular labrum.[47] The ALJ also highlighted that, while imaging reflected that Plaintiff had degenerative changes in her knees, Plaintiff's knee pain was largely treated by Synvisc injections.[48] The ALJ further highlighted that these conditions were generally mild, though L5-S1 bilateral degenerative facet disease was moderate to severe and there was severe chondromalacias of the

---

[43] *See Bray*, 554 F.3d at 1228; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

[44] AR 25.

[45] *Lingenfelter*, 504 F.3d at 1042.

[46] AR 782.

[47] AR 814.

[48] AR 647, 355, 344.

patellofemoral joint in the left knee.[49] The ALJ found that these conditions, even when considered cumulatively, did not impact Plaintiff's strength, ability to ambulate, or gait to such an extreme extent as opined by Dr. Smith. For instance, Plaintiff had a steady, non-antalgic gait in April 2015 with a negative straight leg raise and only mild to moderate limitation in her range of motion[50]; in March, May, and July 2016, Plaintiff had only minimal limitation in her range of motion, had a steady, non-antalgic gait, performed a negative straight leg raise, and had almost full lower extremity strength[51]; and 3) in November 2016, Plaintiff had mild limitation with her range of motion, had slightly forward biased gait, and performed a negative straight leg raise.[52] On this record, the ALJ's finding that Dr. Smith's extreme opinion was inconsistent with the objective medical record is supported by substantial evidence. This was a specific and legitimate reason to discount Dr. Smith's opinion.

Finally, the ALJ discounted Dr. Smith's opinion because "her opinion regarding capacity for any work is a finding reserved for the [C]ommissioner."[53] Although a statement by a medical source that a claimant is "unable to work" is

---

[49] AR 782-83, 647, & 667.

[50] AR 371.

[51] AR 855, 882, & 902.

[52] AR 934.

[53] AR 25.

not a medical opinion and is not due "any special significance," 20 C.F.R. § 404.1527(d), an ALJ is required to consider medical source opinions about any issue, including issues reserved to the Commissioner, by evaluating the opinion in light of the evidence in the record and applying the applicable 20 C.F.R. § 404.1527(c) factors.[54]

Plaintiff contends the ALJ failed to apply the appropriate analytical factors required by 20 C.F.R. § 404.1527(c), which includes the nature of the examining or treating relationship, supportability and consistency of the opinion, the physician's specialization, and knowledge of the Social Security Administration's disability programs. While an ALJ is required to consider the § 404.1527(c) factors, the ALJ is not required to make an express statement that he considered all of the factors nor take each factor one-by-one, instead the record must reflect that the ALJ considered whether the opinion was consistent with and supported by the record.[55] Here, while the ALJ's paragraph pertaining to Dr. Smith was fairly succinct and primarily only listed the reasons why the ALJ discounted the opinion, the ALJ had previously identified Dr. Smith as Plaintiff's primary care physician and discussed the objective medical evidence relating to Plaintiff's medical conditions.[56] The

---

[54] SSR 96-5p at *2-3.

[55] *Kelly v. Berryhill*, 732 Fed App'x 558, 562-63 n.4 (9th Cir. May 1, 2018) (unpublished opinion).

[56] AR 23-25.

ALJ's reasons for rejecting Dr. Smith's opinion (and assigning greater weight to the two reviewing opinions of Dr. Saue and Dr. Thompson) speak to the § 404.1527(c) factors and demonstrate that the ALJ considered these opinions in line with § 404.1527(c). The ALJ considered Dr. Smith's contradicted opinion to be neither supported by her treatment notes nor the remaining objective medical findings.[57] The ALJ also analyzed each of the medical opinions and explained how much weight he gave to each opinion and the reasons for giving greater weight to Dr. Saue's and Dr. Thompson's opinions, including that Dr. Thompson had specialized knowledge as an orthopedic surgeon and was familiar with the Social Security disability program.[58] The record reflects the ALJ considered Dr. Smith's opinion together with the other evidence and then, after setting out a detailed and thorough summary of the facts and conflicting treatment and opinion evidence, provided specific and legitimate reasons explaining why he discounted Dr. Smith's opinion. Section 404.1527(c) was satisfied. Therefore, while the ALJ ought not to have discounted Dr. Smith's opinion on the grounds that it was a finding reserved for the Commissioner, this error was harmless because the ALJ weighed each of the opinions, including Dr. Smith's opinion, consistent with § 404.1527(c) and the ALJ's findings were supported by substantial evidence.

Plaintiff failed to establish a consequential error.

---

[57] AR 25.

[58] AR 24-25.

**B.    Plaintiff's Symptom Reports: Plaintiff failed to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[59] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[60] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, improvement with treatment, and choice to decline other recommended treatment.[61]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[62] However, medical evidence is a relevant factor in considering

---

[59] *Molina*, 674 F.3d at 1112.

[60] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[61] AR 23.

[62] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

the severity of the reported symptoms.[63] As discussed above, in contrast to Plaintiff's reported disabling symptoms, the ALJ found that Plaintiff's range of movement, strength in her lower extremities, and gait were largely normal and consistent with the ability to perform light exertional work.[64] Yet, the ALJ considered Plaintiff's chronic pain caused by the knee, back, and shoulder conditions and crafted an RFC that allowed Plaintiff to rotate every hour (for up to ten minutes) between standing and sitting and included postural limitations and restrictions to occasional overhead reaching and occasional foot control with her right foot.[65] On this record, the ALJ rationally compared the objective medical evidence against Plaintiff's symptom reports and found that Plaintiff's symptom reports were not fully supported by the objective medical evidence.

Second, the ALJ's finding that Plaintiff's reported symptoms were inconsistent with her improvement with treatment, namely lumbar fusion and injections, was rational and supported by substantial evidence. For instance, after Plaintiff's lumbar surgery in November 2014, Plaintiff was routinely observed with a gait that was steady and non-antalgic gait, slightly forward biased, or steady and

---

[63] *Id.*

[64] AR 24.

[65] AR 24. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

slightly antalgic gait,[66] and she reported reduced pain following shoulder and knee injections.[67] Moreover, the ALJ reasonably found that Plaintiff's medication regimen reduced Plaintiff's pain to a manageable level and crafted an RFC that would minimize pain-causing movement.[68] On this record, that Plaintiff's pain improved with injections and with the medication regimen was a clear and convincing reason to discount Plaintiff's reported disabling symptoms resulting from her knee, back, and shoulder conditions.[69]

---

[66] AR 371, 581, 601, 625, 675, 759-60, 855, 863, 906, & 934.

[67] AR 557 (bilateral knee injections); AR 344 & 356 (reporting 50% to 60% improvement in bilateral knees due to injections); AR 638 (noting that Plaintiff has done well with injections in the past and proceeding with shoulder injections). *See also* AR 423-25 (May 2015: noting that Plaintiff was gaining strength in her legs and trunk as a result of regular physical therapy and that her posture was improving and that Plaintiff reported less pain symptoms and being more active).

[68] AR 940, 944.

[69] *See* 20 C.F.R. § 404.1529(c)(3) (effectiveness of treatment); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

Third, the ALJ discounted Plaintiff's symptom reports because Plaintiff had not agreed to proceed with two recommended medical procedures, arthroscopy for the loose bodies in her left knee and rhizotomy for back pain.[70] Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure.[71] Plaintiff offered no explanation for why she declined the recommended arthroscopy or rhizotomy. This was a clear and convincing reason to discount Plaintiff's symptom claims about her knee and back pain.

In summary, Plaintiff failed to establish the ALJ erred by discounting Plaintiff's symptom reports.

## C. Lay Witness Testimony: Plaintiff failed to establish consequential error.

An ALJ must consider the testimony of lay witnesses in determining how an impairment affects the claimant's ability to work, and, if the lay witness statements are rejected, the ALJ must give germane reasons for discounting such statements.[72]

---

[70] AR 667, 878.

[71] *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

[72] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Plaintiff argues the ALJ failed to 1) consider the lay witness statement from Plaintiff's former supervisor, Cris Torres, and 2) provide a germane reason for discounting the lay witness statement from Plaintiff's step-mother, Wilma Collings.

    1.  Cris Torres

During the administrative hearing the ALJ discussed Ms. Torres' email, which mentioned Plaintiff's work ethic, observed pain when she was working before the alleged disability onset, and attempts to modify her desk and find a comfortable chair to reduce Plaintiff's back pain.[73] The ALJ did not discuss or cite the email in his decision. Plaintiff contends this error requires remand. However, even if the ALJ erred by failing to discuss what weight he gave to Ms. Torres' statement, Plaintiff failed to establish any harmful error resulting from the ALJ's failure to mention or cite to Ms. Torres' email in the decision.

In her email, Ms. Torres discussed Plaintiff's conditions while she was employed, which was before the alleged disability onset date of September 24, 2014. The ALJ's decision focused instead on the medical evidence since the alleged disability onset date: medical evidence that reflected that Plaintiff's impairments were not as disabling as claimed by Plaintiff and that Plaintiff had lumbar fusion in November 2014, had injections to reduce knee and shoulder pain, and had declined

---

[73] AR 49 & 277.

two recommended treatments.[74] Moreover, the crafted RFC permitted Plaintiff to rotate between sitting and standing to accommodate her back and knee pain. On this record, no harmful error has been established because of the ALJ's failure to discuss the email in the written decision, particularly when the email was discussed during the administrative hearing.

2.   Wilma Collings

The ALJ assigned partial weight to Ms. Collings' statements because they essentially mirrored those of Plaintiff and were not fully supported by the objective medical findings.[75] Because these statements are similar to Plaintiff's symptom reports, and the ALJ properly discounted Plaintiff's symptom reports for clear and convincing reasons, the ALJ needed only point to the same reasons to discount this lay testimony.[76] These were germane reasons for discounting Ms. Collins' statements.

---

[74] *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (recognizing that evidence pertaining to a time period outside the alleged period of disability is of limited relevance).

[75] AR 25-26.

[76] *See Molina*, 674 F.3d at 1114; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

**D.    Modified Light Work RFC: Plaintiff failed to establish error.**

Plaintiff argues the ALJ erred at step four by finding that Plaintiff was capable of performing her past work as a data processing services sales representative. The vocational expert testified that the data processing services sales representative was a light exertional position but that it allowed for a sit/stand option.[77] The ALJ crafted an RFC that required Plaintiff to be able to alternate between sitting and standing every hour, for at least ten minutes, while staying on task. This modified light work, along with the postural, reaching, foot-control, and other restrictions sufficiently incorporated Plaintiff's limitations that were supported by substantial evidence in the record. Based on the ALJ's crafted RFC and the vocational expert's testimony, the ALJ's finding that Plaintiff could perform past work as a data processing services sales representative is rational and supported by substantial evidence. Plaintiff failed to establish error.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The Clerk's Office is directed to substitute Andrew M. Saul, the Commissioner of Social Security, as the Defendant.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

---

[77] AR 66-68.

4.     The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

5.     The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 25TH day of November 2019.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge